IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JEREMY BAYNE LYNCH,                    :

      Petitioner,                    :
                             CIVIL ACTION NO. 15-0664-CG

vs.                                    :
                             CRIMINAL NO. 13-0154-CG

UNITED STATES OF AMERICA,              :

      Respondent.

## REPORT AND RECOMMENDATION

    Petitioner, Jeremy Bayne Lynch, has filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 290; *see also* Doc. 293). This action has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and General Local Rule 72(a)(2)(R). Following consideration of all relevant pleadings in this case, it is recommended that Lynch's § 2255 motion be **DENIED**.

## FINDINGS OF FACT

    On July 25, 2013, Lynch was charged in a twenty-count superseding indictment—along with six co-defendants—with conspiracy to possess with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)[(viii)] (Count One); and five separate counts—on March 7, 2012, March 12, 2012, March 13, 2012, April 11, 2012, and April 13, 2012—of knowingly and willfully possessing with intent to distribute different amounts of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (Counts Five, Six, Seven, Nine, and Eleven). (Doc. 4, at 1-6.)

Lynch filed written notice of intent to plead guilty to Count One of the superseding indictment on October 25, 2013 (Doc. 132) and during his change of plea hearing, on October 29, 2013, Lynch specifically informed the Court that he was a high school graduate, he had received a copy of the indictment, he had fully discussed the charges with his attorney and understood the nature of same, and that he was fully satisfied with his attorney's representation and advice (Doc. 266, at 3-4.) Petitioner acknowledged that the plea agreement and factual resume he was being shown constituted "his" plea agreement and factual resume and that he had signed those documents. (*Id.* at 4.) Lynch acknowledged that he had read and discussed the plea agreement with his attorney before signing it, that he understood the terms of the plea agreement, that no promises not contained in the agreement had been made to persuade him to accept the plea agreement, that he had not been threatened in an attempt to persuade him to accept the agreement or plead guilty and no one forced him to plead guilty, and that he was pleading guilty of his own free will because he was guilty. (*Id.* at 4-5.) Petitioner was informed of the statutory minimum (five years) and maximum (forty years), given general information about the sentencing guidelines, and acknowledged the rights he was waiving by entering his plea of guilty. (*Id.* at 6-7 & 8.) In addition, Lynch acknowledged his understanding of the limited waiver of his right to appeal contained in his plea agreement—that is, he had the right to appeal only if the sentence imposed is in excess of the statutory maximum or if it constituted an upward departure or variance from the sentencing guideline range, or if he had a claim of ineffective assistance of counsel—as well as a waiver of his right to file a § 2255 petition, with the exception that he could file a collateral challenge raising a claim of ineffective assistance of counsel. (*Id.* at 7-8.)

2

Thereafter, petitioner entered a plea of guilty to Count One of the superseding indictment on October 29, 2013, but only after acknowledging the government's burden—which required proof of: (1) two or more people coming to a mutual understanding to possess with intent to distribute methamphetamine; (2) defendant, knowing the unlawful purpose of the plan, knowingly and intentionally joined in the plan; and (3) more than 50 grams of methamphetamine was involved in the conspiracy—and acknowledging that the government could prove the facts set forth in the factual resume. (*Id.* at 9.)

The twenty-two page factual resume, which Lynch acknowledged during the guilty plea proceeding (Doc. 266, at 9) and signed (Doc. 137, at 22), connects Christopher Keith Barber,[1] a key figure in the distribution of methamphetamine ice, to Disa Rivers, another key figure (Doc. 137, at 2,[2] 5 & 9[3]); it then connects Rivers and

---

[1]         Barber received a custodial sentence of 95 months. (*See* Doc. 284.)

[2]         "CD1 stated that Christopher Keith Barber was involved with the distribution of methamphetamine ice. CD1 stated that he had been at Barber's apartment 4 or 5 times while Barber met with his suppliers to provide him with methamphetamine ice. CD1 stated that Barber would purchase several ounces of meth ice at a time from these suspects. CD1 had been given a pistol by Disa Rivers and he had acted as 'the enforcer' while the transactions took place in Barber's apartment. CD1 was to open the door for the subjects and stand by while the deals took place. CD1 stated that Rivers was a nurse at a hospital and has smoked meth ice." (*Id.* at 2.)

[3]         "On January 6, 2012, a confidential informant working for the MCSO notified deputies that the informant had been contacted by Disa Rivers, who asked the informant if the informant 'was looking,' meaning was the informant interested in buying methamphetamine. The deputies met the informant and another informant at a predetermined location. The deputies searched the informants and their vehicle. The deputies provided the informants with $100 and instructed them on their conduct during the controlled buy. The informants traveled to the location that was named by Rivers in the phone call. At about 10:35 a.m., the informants notified the deputies that the buy was completed. The informants told the deputies that Tessa Weaver Rivers was the driver of the vehicle, and Disa Rivers was in the passenger seat. Both the informants observed as Tessa Rivers handed Disa a baggie of methamphetamine. Tessa (sic) exited the vehicle and gave the methamphetamine to the first informant, who gave Disa Rivers the cash. . . . Tessa told the informants that she (Tessa) had 'three more' to get rid of. . . . At about 10:50 a.m., the informants returned to the prearranged location where the first informant (Continued)

Barber to Haley Jordan (*id.* at 5)[4]; and, ultimately, for purposes of this opinion, connects Disa Rivers and Haley Jordan to Lynch, himself a distributor of methamphetamine ice linked to five controlled buys of methamphetamine (*id.* at 10-14).

On March 7, 2012, Deputies Steve Leger, Raylene Busby and Bryan Hill met with a confidential informant to make arrangements for a controlled buy of methamphetamine from Disa Rivers. The deputies searched the informant and the informant's vehicle. The informant was equipped with electronic devices to make audio and video recordings of the transaction. The informant was provided with prerecorded currency and left to make the deal. The informant then met the officers at the predetermined location and the deputies took custody of the methamphetamine ice, which field tested positive for methamphetamine. They took custody of the electronic devices and again searched the informant and the informant's vehicle. The informant told the officers that Rivers had to travel to another location about five minutes from her residence to get the methamphetamine ice from a male. The informant waited at Rivers' residence while Rivers made the trip.

The deputies met with a reliable confidential informant to purchase an 8-ball of meth ice from Disa Rivers, on March 12, 2012. The informant took $300 in prerecorded currency from the deputies and arranged with Disa to meet at a convenience store on Highway 43 North past the [I]nterstate. The deputies followed the informant to the location. The deputies observed as the informant gave Disa the money. Disa was driving a silver Isuzu Rodeo displaying Alabama tag BLS794.

Disa left the location, and Deputy Brian Hill and Raylene Busby followed her to the Pilot Truck Stop in Satsuma just south of the Interstate.

---

handed Deputy Busby a small ziplock baggie containing methamphetamine. The informants and their vehicle were again searched for contraband, and none was found. The methamphetamine, weighing approximately .6 grams, was submitted to the DFS for analysis." (*Id.* at 9, 9-10 & 10.)

[4]    "CD1 told the deputies that Disa Rivers was present at Barber's house with Barber and Haley Jordan when Rivers told Barber she had a couple of guns. . . . In March of 2011, CD1, Rivers, Barber and another female were at Barber's apartment when Barber was showing them a new gun he had bought. Rivers commented that she had some guns she would sell. . . . CD1 and Rivers went back to CD1's house. Eventually, CD1 bought the 9 mm gun found in his possession when he was arrested from Rivers. . . . CD1 gave Rivers a half-gram of methamphetamine for the gun. . . . CD1 also stated that Rivers had purchased about 3.5 grams of meth from him over three months." (*Id.* at 5-6.)

Disa met a white male, subsequently identified as Jeremy Lynch, who was driving a brown Ford F150 pickup truck, displaying Alabama tag 2A14H20. Disa moved her car to the vacuum machines, and Lynch approached Disa at the driver's side window. A short time later, Lynch was observed as he got into his vehicle and drove to the back of the truck stop. Disa followed him in her vehicle.

A short time later, Disa drove away from the truck stop. Sgt. Mark Herbert and Deputy Hill followed her to the Saraland Wal Mart. Deputy Busby notified the officers following her to wait for her to park and then initiate a takedown. When Disa parked, deputies approached her vehicle and she was ordered to get out. Deputy Preston Jones observed a tied baggie corner containing [a] clear rock-like substance that appeared to be methamphetamine ice. Disa was advised of her rights and the deputies allowed her to return to her residence after the drug evidence was collected. Disa provided a post-Miranda statement in which she implicated herself and several others in the distribution and manufacture of methamphetamine.

Disa told the officers that Jeremy Lynch[,]who works at the trailer place on Highway 43[,] distributed methamphetamine ice. Haley Jordan told Disa that Jeremy was dealing in methamphetamine ice. Lynch and Jordan drive to Montgomery or Birmingham once a week to get the ice from someone up there. Lynch also makes those trips alone from time to time. Lynch normally ordered ounces of ice and brings them to Mobile once a week.

Disa last dealt with Keith Barber a couple of months ago. Barber would sell Disa a half-gram, and that is the least amount he would sell her. She said she had known him for about a year. Disa initially dealt with Barber through Haley Jordan, but then began to deal directly with him. She began to buy from Barber about 11 months ago. . . .

Disa also provided directions to Haley Jordan's trailer on Lister Dairy Road. She told the deputies that Jeremy Lynch lived off Lister Dairy Road in a houseboat.

The methamphetamine ice, approximately 2.9 grams in the baggie and .7 grams in the bottle, were sent to the DFS for analysis. An examination of the pseudoephedrine records in Disa's name revealed that she bought 24 grams of pseudoephedrine from 10/23/11 through 3/5/12.

On April 11, 2012, CD2 agreed to make a controlled buy of methamphetamine from Jeremy Lynch. She met with the deputies at a prearranged location where her person and vehicle were searched for contraband. None was found. CD2 was provided with prerecorded currency for the buy, and Deputy Hill instructed her on the use of the electronic devices with which she was equipped to record the buy. CD2

5

drove to the houseboat where Lynch resides, which is docked behind a residence at 8807 Lister Dairy Road in Creola. After the transaction was over, the deputies met with CD2 at a predetermined location where Deputy Leger took custody of the drug evidence and field[-]tested it, which was positive for meth. The deputies took custody of the electronic equipment and searched CD2 and her vehicle again.

On April 13, 2012, the deputies again met with CD2 to make another controlled buy of methamphetamine from Lynch. They [] searched CD2 and her vehicle, finding no contraband. They provided her with $100 in prerecorded currency and electronic devices to record the buy. CD2 drove to a mobile home sales lot on Highway 43 in Axis, where she met Lynch and exchanged the buy money for a gram of methamphetamine ice. CD2 returned to a prearranged location where she met the deputies and provided them with the drugs and the equipment. CD2 and her vehicle were again searched for contraband with none being found. The meth ice weighed 1.1 grams.

On March 13, 2012, Deputy Leger was notified by CD2 that Lynch had contacted her and told her he had a gram of methamphetamine ice for sale. CD2 said that Lynch told her that he was tied up at work, and could not meet her to sell the ice at that time. CD2 called Deputy Leger back and told him that Haley Jordan had volunteered to go get the meth ice from his work and deliver it to the informant. Deputy Leger told CD2 that would be fine. CD2 said she would call Jordan to arrange for a location from which they would make the buy.

At 1:45 p.m., Deputies Leger, Hill and Busby met CD2 at a prearranged location where Disa's person and vehicle were searched for contraband. None was found. CD2 was provided with $100 in prerecorded currency and electronic devices through which the buy would be recorded. CD2 left the prearranged location to meet with Lynch, who told her via text message that his "boss had left," and that CD2 could come to his place of employment to make the drug buy. While CD2 was en route, Lynch called her again and told her to come to Haley Jordan's residence on Lister Dairy Road to make the buy. CD2 called Deputy Leger and told him that the plan had changed again.

Deputy Leger told CD2 to go ahead to the new location for the buy. While en route, however, CD2 ran out of gas. She pulled over to the side of the road about an eighth of a mile from Jordan's residence. The deputies were following CD2 to conduct surveillance in connection with the buy. They passed CD2 on the side of the road and also drove past Jordan's residence, where they observed Lynch and Jordan standing beside Lynch's truck in the yard. Lynch and Jordan got into the truck and drove to CD2's location on the side of the road. CD2 had called them to get her some gas. CD2 approached Lynch's truck, where he was in the driver's seat. They began to talk, and Lynch reached toward the center

hump and the passenger's side of the vehicle, where Jordan was sitting. Lynch retrieved the drugs and provided them to CD2.

Lynch and Jordan then left to get some gas for CD2's vehicle. They returned with the fuel. CD2 called Deputy Leger and he told her where to meet the deputies to turn over the drugs and the recording equipment. Upon arrival, at the prearranged location, CD2 provided the deputies with the drugs, a tied baggie corner containing meth ice, and the equipment.

(*Id.*) The last sentence of the factual resume, signed by Lynch and his attorney on October 28, 2013, reads, as follows: "Although the defendant admits that the Government can prove more than 50 grams of methamphetamine mixture and substance was involved in the conspiracy, the parties agree that the defendant is accountable for 9.7 grams of methamphetamine mixture and substance and 15 grams of methamphetamine ice as relevant conduct. (*Id.* at 21-22.)

While the plea agreement, which Lynch specifically acknowledged during his change of plea proceeding (Doc. 266, at 4),  mistakenly references Count One of the indictment as charging conspiracy to *manufacture* methamphetamine (Doc. 136, at 1), it incorporates by reference the factual resume (*id.* at 2) discussed at length above. The first page of the factual resume, of course, sets forth Count Once of the indictment and the elements of the offense charged: "The defendant understands that in order to prove a violation of Title 21, United States Code, Section 846, conspiracy to possess with intent to distribute methamphetamine, as charged on Count One of the Indictment, the United States must prove the following beyond a reasonable doubt: first, that two or more individuals came to a mutual understanding to commit an unlawful act, in this case, the possession with intent to distribute methamphetamine; second, that the defendant, knowing of the unlawful purpose of the plan, knowingly and intentionally joined in the plan; and third, that more than 50 grams of methamphetamine was involved in the conspiracy." (Doc. 137, at 1.) And, of course, it is conspiracy to possess with intent to

distribute methamphetamine, as charged in Count One of the indictment, to which

Lynch entered a counseled guilty plea on October 29, 2013. (Doc. 266, at 9.) The plea

agreement, signed on October 28, 2013, by Lynch (Doc. 136, at 12 ("I have consulted

with my counsel and fully understand all my rights with respect to the offense charged

in the Indictment pending against me. I have read this Plea Agreement and carefully

reviewed every part of it with my attorney. I understand this agreement, and I

voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein,

is true and accurate in every respect, and that had the matter proceeded to trial, the

United States could have proved the same beyond a reasonable doubt.")) and his

attorney (*id.* at 12 & 13 ("I am the attorney for the defendant. I have fully explained his

rights to him with respect to the offense(s) charged in the Indictment in this matter. I

have carefully reviewed every part of this Plea Agreement with him. To my knowledge,

his decision to enter into this agreement is an informed and voluntary one. I have

carefully reviewed the Factual Resume, incorporated herein, with the defendant and to

my knowledge, his decision to stipulate to the facts is an informed, intelligent and

voluntary one.")), otherwise reads, in relevant part, as follows:

### APPLICATION OF U.S.S.G. § 5K1.1 AND/OR FED.R.CRIM.P. 35

20.      The defendant understands and agrees that he has no right to
cooperate, and that the decision whether to allow him to cooperate is
reserved solely to the United States in the exercise of its discretion.[5] If the
United States agrees to allow the defendant to cooperate, and if the
defendant agrees to cooperate, the following terms and conditions apply:

---

[5]      At the conclusion of the change of plea hearing on October 29, 2013, defense
counsel made the following cooperation-relevant comment: "We signed a proffer letter back on
August the 16th and delivered it to Ms. Bedwell. She's arranging to have Deputy Busby speak
with Mr. Lynch, and she expects at least safety valve if not cooperation to result from this. So I
don't think she would be asking for detention because her statement to me is . . . she expects his
cooperation, and we've been trying." (Doc. 266, at 10-11.)

a.      The defendant shall fully, completely, and truthfully respond to all questions put to him by law enforcement authorities regarding the underlying facts of the offense(s) for which he is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which he has information or knowledge.

.       .       .

d.      If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance, and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

.       .       .

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

21.     As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence . . . in any district court or appellate court proceedings.

a.   **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1)         any sentence imposed in excess of the statutory maximum;

(2)         any sentence which constitutes an upward departure or variance from the advisory guideline range.

In addition, the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to 28 U.S.C. § 2255.

(Doc. 136, at 5, 6-7, 8-9 & 10 (footnote added).)

Lynch's sentencing was set for January 27, 2014. (*See* Doc. 266, at 12.) A presentence investigation report ("PSI"), prepared on December 4, 2013 and filed on December 20, 2013 (but also reflecting a revision date of January 15, 2014), noted the Court's sentencing options, that is, sentencing under the statutory provisions in accordance with 21 U.S.C. § 841(b)(1)(B) (a minimum of 5 years and a maximum of 40 years) or sentencing under the guidelines provisions, which the Probation Officer calculated as a range of 63 to 78 months based upon a total offense level of 26. (Doc. 172, at 11.) In reaching the Base Offense Level of 26 under the Sentencing Guidelines (which, obviously, did not vary from the total offense level later noted), the Probation Officer performed the following analysis:

> The guideline for 21 USC § 846 offenses is found in USSG §2D1.1 of the guidelines. Pursuant to the Relevant Conduct Standard, USSG § 1B1.3, the defendant is to be held accountable for (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; (1)(B) all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity; and (2) solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) that were part of the same course of conduct or common scheme or plan as the offense of conviction. The defendant is accountable for 9.7 grams of methamphetamine mixture and substance and 15 grams of methamphetamine "ice." In order to aggregate drug amounts, all drugs are converted to their marijuana equivalents.
>
> One gram of methamphetamine (mixture and substance) is the equivalent of 2 kilograms of marijuana; therefore, 9.7 grams of methamphetamine mixture and substance are equivalent to 19.4 kilograms of marijuana.
>
> One gram of methamphetamine "ice" is the equivalent of 20 kilograms of marijuana; therefore, 15 grams of methamphetamine "ice" are equivalent to 300 kilograms of marijuana.
>
> This yields a total marijuana equivalent of 319.4 kilograms. Pursuant to USSG § 2D1.1(c)(7), offenses involving at least 100 kilograms but less than 400 kilograms of marijuana have a base offense level of 26.

(*Id.* at 7.) In her analysis to reach the total offense level (26) under the Sentencing Guidelines, the Probation Officer failed to "credit" Lynch with acceptance of responsibility. (*Compare id.* at ¶¶ 24-26 *with id.* at ¶ 35.)

Another PSI, filed with the Court on January 17, 2014 and showing a final revision date of January 16, 2014 (Doc. 180, at 1), performs the exact analysis as reflected above, with the exception that the Probation Officer credited plaintiff for acceptance of responsibility, thus rendering a Total Offense Level of 23 under the Sentencing Guidelines (Doc. 180, at ¶¶ 35-37), thereby rendering a guideline imprisonment range of 46 to 57 months (*id.* at ¶ 73; *see id.* ("However, since the minimum custody sentence is 60 months, the guideline range is 60 months.")).

It is with respect to the first report that the government mistakenly took exception (*see* Doc. 175, at ¶ 1 ("The Government does not concede at this time that the defendant qualifies for safety valve as reflected in paragraph 28,[6] and reserves an objection based upon that position. In fact, the Government submits that the evidence indicates that the defendant has affirmatively provided false information to the authorities and that accordingly, he does not qualify for acceptance of responsibility. These objections relate to paragraphs 29, 35 and 36 of the presentence investigation report." (footnote added)); however, defense counsel "did not agree with the Government's assertions." (*Id.* at ¶ 2.) And, on January 15, 2014, defense counsel did object to the "amended PSI" (Doc. 177) and it is clear that it is with respect to the PSI

---

[6]     This paragraph is identical in both of the reports referenced hereinabove and is the paragraph that reflects the Probation Officer's calculation of Lynch's Base Offense Level under the Sentencing Guidelines. (*Compare* Doc. 172, at ¶ 28 *with* Doc. 180, at ¶ 28.)

filed on December 20, 2013 (and showing a revision date of January 15, 2014) that defense counsel's objection is based (*compare id. with* Doc. 172, at ¶¶ 26, 29 & 35).

In an addendum to the PSI, filed January 17, 2014, the Probation Officer responded to the government's "safety valve" comments by noting that "[t]he defendant did not receive an adjustment for safety valve[.]" (Doc. 181, at 1.) And, as for Lynch's objection to the failure to adjust for "safety valve[,]" the Probation Officer replied in the following manner: "The court shall impose a sentence in accordance with the applicable guidelines, without regard to any statutory sentence, if the court finds that the defendant meets the criteria in USC § 3553 (f)(1)-(5). The defendant failed to meet the criteria in USSG § 5C1.2(a)(5), which states 'the defendant has truthfully provided to the government all information and evidence that the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.' Based on the aforementioned information concerning the defendant's inconsistencies, the defendant is not entitled to the adjustment for 'Safety Valve.'" (*Id.* at 1-2.)

Lynch was sentenced on January 27, 2014. (*See* Doc. 267.) When the Court questioned counsel regarding whether there were any objections to the guideline calculations, the following discussion occurred:

> MR. BYRD:  Yes, ma'am. There was – no, I guess not to the guideline calculation, no. There are objections to some of the matters in there.
>
> One would be the acceptance of responsibility. Originally Mr. Lynch was given acceptance, and then with the updated one on January the 15th that was removed. And we submit he's entitled to acceptance of responsibility.
>
> THE COURT:       All right. What is the government's position on that?

MS. BEDWELL:      Judge, I'm looking at the most current one I have, January 16th, which reflects that the report provided him with acceptance of responsibility in paragraphs 35 and 36.

THE COURT:      Yeah. The one I have gives him acceptance of responsibility, but not safety valve.

MR. BYRD:  Oh, then there must be a more recent one than the January 15th one that I've got, Your Honor.

THE COURT:      Well, the one I have is dated – date revised January 15th and January 16th. So I guess it was revised on both dates. Anyway, I think the latest one gives him acceptance of responsibility.

MS. CLEVELAND:  Yes.

MR. BYRD:  That was the primary issue. We are concerned with the safety valve. But I believe, to be perfectly frank, I think that takes an acknowledgement or statement from the government that the information they got from Mr. Lynch they believe to be the truth. And without that, I don't know if we argue – I've never been in this position before, but I don't know how to argue for safety valve if the government doesn't think he gave the whole truth. And that's the requirement, I think, for the safety valve.

THE COURT:      All right. What is the government's position on that?

MS. BEDWELL:      That's our position, Your Honor. The defendant affirmatively made false statements to the government. It's one thing for him just to refuse to cooperate. But he ostensibly indicated that he would cooperate. His information did not match with other information we had, including statements tape[-]recorded from this defendant during the undercover investigation. And when he was polygraphed, it showed deception and the defendant admitted he lied during that post-examination test. So we submit he does not qualify for safety valve.

THE COURT:      You obviously disagree with something.

MR. BYRD:  Well, yes, ma'am, I do. . . . [F]irst of all, as we've learned as lawyers reading transcripts and so forth, sarcasm and irony do not appear on a written record. The statement Ms. Bedwell refers to, at the conclusion of the polygraph Mr. Lynch was confronted, said: "The polygraph  indicates that you were deceptive." And . . . they said: "And how could that be if you told the truth?" He took the polygraph.

And Mr. Lynch, in sarcasm, said: "Well, I guess that means I must have lied." But he was saying it in sarcasm, because my information from Mr. Lynch is that they spent . . . two and a half to three hours doing this polygraph exam and that Mr. Lynch was told before it started that either he'd tell the truth and pass it, or he was on drugs and he would pass it, or he would be lying and . . . it would be discovered in the test.

He took the test, told the truth, the whole truth, the same thing he's told every time. And as soon as the test was over, they sent him from the polygraph office to the probation office for him to do a drug test to prove that he was not on drugs. He told the truth, he was telling the truth. They wanted to check his drug level because apparently they thought he deceived them by passing a polygraph test by being on drugs. He's been drug free. He was clean. He has been the whole time.

Mr. Lynch volunteered to go in, volunteered to take the polygraph test as requested / required, told them the truth, told them the same thing he's told them every time. It doesn't coincide with what some of the other defendants have told them in this case. But we submit those other defendants are not worthy of belief either.

THE COURT:        Well, I'm confused, because first you said he failed the polygraph test and then you said he passed the polygraph.

MR. BYRD:  They say he failed the polygraph test. He told the truth, he's told the same thing he's told every time. Their examiner said it indicated deception. That's the polygraph examiner's opinion, and that's why they're not admissible and we get into this issue if we were to admit them.

But Jeremy's told the same story every time. It just doesn't coincide with the stories being told by other meth users.

THE COURT:        Well, how do you explain the difference between what the government contends he said in a taped conversation when the offense was occurring and what he apparently has told them.

MR. BYRD:  I think what they're referring to is in the taped conversation . . . Jeremy makes claims of having numerous contacts with Shorty up in Evergreen and the Prattville area and getting all kinds of drugs from Shorty. Jeremy explained to the prosecutors when he was being debriefed and then in taking the polygraph: "Yeah, I was talking big. But no, I went up there – I believe it was one time to Evergreen and one time to a store in Montgomery where Shorty didn't show up."

So his statements, the truth to the polygraph and debriefing, are inconsistent with his bolstering his credibility or his size or importance in

the meth community because he talked a big game and then was telling the truth: "Hey, I'm not that big a deal."

THE COURT:       All right. Do you have anything else you want to add, Ms. Bedwell?

MS. BEDWELL:       Your Honor, it's just that he's arguing that he lied when there was no motive for him to lie and he's telling the truth when he has a motive to lie. The government submits it's the other way, and particularly in light of the failed polygraph. So we submit to the Court that he's not entitled to safety valve. He has failed to truthfully provide information known to him relating to the offense of conviction.

THE COURT:       Well, I have no way to judge that other than what the government . . . has indicated. So I find that apparently he is not eligible for the safety valve.

MR. BYRD:   Yes, ma'am. I appreciate that.

THE COURT:       Which, or course, regardless of what the – well, not regardless. But the guidelines calculate out to level 23, criminal history category I. Are there any objections to those findings?

MR. BYRD:   No, ma'am.

THE COURT:       All right. So that's a 46 to 57 months guideline range, but the statutory mandatory minimum is required with no safety valve, and therefore that is 60 months.

(Doc. 267, at 2-7.) Following final comments by defense counsel (*id.* at 7-8) and Lynch himself (*id.* 8 ("I messed up. There ain't no doubt about it. I can't blame it on nobody. It's my fault. I knew better. I was raised better. All I'm asking for is a little leniency. I mean, I know I was wrong. But it's not to the extent that it's made out to be. All I can do is ask for leniency and hope you'll believe me. . . . I'm one of the hardest workers and one of the nicest people you'll ever be around. I care about my family, and I've put them through more misery in the last year and a half going through this and it's shameful, it's truly shameful. And I'm here to ask that you give me a chance to show you that I ain't what it appears like I was.")), and the government placing its sentencing recommendation on the record (*id.*), the Court found the statutory minimum to be the

15

required sentence and, therefore, sentenced Lynch to a term of 60 months as to Count One (*id.* at 8-9). The Court advised Lynch of his right to appeal if he believed his "guilty plea was unlawful or involuntary" or if there was "some other fundamental defect in the proceeding that was not waived" by entry of the guilty plea. (*Id.* at 10-11.) In addition, the Court advised Lynch that he had a "statutory right to appeal the sentence itself in certain circumstances[]" but reminded him that his plea agreement waived certain of those rights. (*Id.* at 11.) "If you do decide to appeal, you must do so within 14 days of entry of judgment in this case and Mr. Byrd could file that notice for you." (*Id.*)

Although Lynch and his attorney signed a notice of no appeal on the date of sentencing, January 27, 2014, and this notice was filed in open court (*see* Doc. 183), some ten days later, on February 6, 2014, Lynch filed written notice of appeal of his sentence (*see* Doc. 192).

The Court entered its judgment on February 14, 2014, and though that document correctly notes that Lynch pled guilty to Count One of the superseding indictment, a violation of 21 U.S.C. § 846, it incorrectly identifies the nature of the offense as being conspiracy to manufacture methamphetamine, as opposed to the true nature of the offense, which was conspiracy to possess with intent to distribute methamphetamine. (*See* Doc. 201, at 1; *compare id. with* Doc. 4, at 1-2 & Doc. 266, at 8-9.)

Lynch's trial counsel, James M. Byrd, was allowed to withdraw and new counsel, Richard H. Loftin, was appointed to represent him on appeal. (Docs. 225 & 226; *compare id. with* Doc. 212.)  The Eleventh Circuit Court of Appeals, in an unpublished opinion entered on December 29, 2014, affirmed Lynch's conviction and sentence in part and dismissed the appeal in part. *See United States v. Lynch*, 595 Fed.Appx. 943 (11th Cir. Dec. 29, 2014).

Jeremy Lynch and six others—Disa Rivers, Christopher Barber, Haley Jordan, Tessa Rivers, Jamie Holland, and Thomas Turner—were charged in a twenty-count superseding indictment with trafficking methamphetamine. Lynch was charged in six counts: Count One, conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846; Counts Five, Six, Seven, Nine, and Eleven, possession with intent to distribute the drug, in violation of 21 U.S.C. § 841(a)(1). Pursuant to a plea agreement, Lynch pled guilty to Count One, which carried a statutory penalty of imprisonment for five to forty years. The plea agreement contained a waiver, which stated that Lynch

> knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, [Lynch will] not challenge his guilty plea, conviction, or sentence . . . in any district court or appellate court proceedings.

The District Court sentenced Lynch to a prison term of sixty months. He now appeals his conviction and sentence. We affirm.

## I.

Lynch seeks the vacation of his conviction on the ground that the District Court committed plain error in accepting his guilty plea to Count One because the factual basis presented to the court was insufficient to show that he was involved in the alleged conspiracy.

Ordinarily, we review a district court's determination of whether there is a sufficient factual basis to accept a guilty plea for abuse of discretion. However, where, as here, a defendant's failure to object to a Federal Rule of Criminal Procedure 11 violation in the district court, we review for plain error under Federal Rule of Criminal Procedure 52(b).

To obtain reversal for plain error, a defendant must show that there is (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.

As for a Rule 11 violation, a defendant who seeks reversal of his conviction after a guilty plea must show a reasonable probability that, but for the error, he would not have entered the plea. To satisfy this standard, the defendant need not prove by a preponderance of the evidence that but for the error things would have been different. Instead, he must satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding.

Rule 11 requires district courts to determine that there is a factual basis for the plea before entering judgment on a guilty plea. The standard for evaluating challenges to the factual basis for a guilty plea is whether the trial court was presented with evidence from which it could reasonably find that the defendant was guilty. There is no requirement that there be uncontroverted evidence of guilt. The purpose of the Rule 11 requirement that a district court conduct a sufficient inquiry into the factual basis for the plea is to protect a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading. We may evaluate a defendant's admissions in a factual summarization if such facts were presented by the parties to enable the district court to determine the factual basis for a guilty plea.

To support a conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that: (1) a conspiracy existed; (2) the defendant knew of the essential objectives of the conspiracy; and (3) he knowingly and voluntarily participated in the conspiracy. In considering the first element, we consider whether a common goal existed, the nature of the underlying scheme, and any overlap of the participants. To prove the third element, knowing and voluntary participation, the government must prove beyond a reasonable doubt that a defendant had the specific intent to join the conspiracy. However, once the government establishes the existence of the underlying conspiracy, it only needs to come forward with slight evidence to connect a particular defendant to the conspiracy.

A defendant's participation in a conspiracy need not be proved by direct evidence, and a common purpose and plan with other co-conspirators may be inferred from a development and collocation of circumstances.

There is a critical distinction between a conspiratorial agreement and a buyer-seller transaction. A buyer-seller transaction is simply not probative of an agreement to join together to accomplish a criminal objective beyond that already being accomplished by the transaction. The essence of a conspiracy, by contrast, is an agreement, not the commission of the substantive offense. Regarding drug transactions, a conspiratorial agreement may be inferred when the evidence shows a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser. Additionally, it is well-established in this Circuit that where there are repeated transactions buying and selling large quantities of illegal drugs, there is sufficient evidence that the participants were involved in a conspiracy to distribute those drugs in the market. While mere presence during a drug transaction is not enough, such presence is certainly a factor to consider in determining whether a defendant joined a conspiracy.

18

Lynch has not demonstrated that the District Court plainly erred in concluding there was a sufficient factual basis for his guilty plea, as there was ample evidence in the record for the court to reasonably find that he was guilty of conspiracy to possess with intent to distribute a substance containing methamphetamine. First, three of Lynch's codefendants—Christopher Barber, Disa Rivers, and Haley Jordan—are linked together through the statements of an unnamed cooperating defendant, as reflected in Lynch's factual summary. Rivers arranged for the cooperating defendant to serve as protection during Barber's drug purchases from suppliers, and Rivers told Barber that she had some guns to sell, sold one of those guns to the cooperating defendant, and possibly sold another to Jordan as well. Rivers confirmed her connection to Jordan and Barber in her post-arrest statements, stating that it was Jordan who introduced her to Barber.

Second, Lynch is linked to both Rivers and Jordan. As to Rivers, a confidential informant ("CI") met with Rivers for a controlled buy; then Rivers met with Lynch, who presumably supplied her with the methamphetamine ice that was discovered in the course of her subsequent arrest. Rivers also made a post-arrest statement implicating Lynch in distributing methamphetamine ice. As to Jordan, Rivers stated that it was Jordan who told her about Lynch's dealing in methamphetamine ice. Rivers also stated that Jordan and Lynch procured methamphetamine ice on a weekly basis. A CI reported that Lynch agreed to a methamphetamine ice deal and that Jordan volunteered to make the delivery. Lynch told the CI to come to Jordan's residence to complete the transaction, and Lynch and Jordan together delivered the methamphetamine ice.

Accordingly, the evidence is not such that a reasonable factfinder could only conclude that the extent of Lynch's involvement was as a seller and thus there was no conspiracy. There is significant overlap of the participants, and the evidence as a whole permits the inference of a conspiratorial agreement in which Lynch took part. Rule 11 does not require uncontroverted evidence of guilt, and circumstantial evidence, particularly presence and association with conspirators, may be considered. In sum, the court committed no plain error here.

II.

Lynch argues that his guilty plea was involuntary because the District Court plainly erred in failing to adequately explain the factual basis underlying his plea. He also argues that under *Alleyne v. United States,* 570 U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), he should be allowed to withdraw his plea so that he can plead anew to one of the five substantive counts and have a factfinder determine the drug amount for which he is to be held accountable.

19

There is a strong presumption that the statements made during the plea colloquy are true. In accepting a defendant's guilty plea, the district court must specifically address the three core principles of Rule 11 by ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea.

Whether the district court has complied with Rule 11's second core principle turns on a variety of factors, including the complexity of the offense and the defendant's intelligence and education. The court should not assume that simply reading the charges to the defendant will suffice; rather, it generally should refer to the elements of the crime or verify that counsel has helped the defendant understand the charges. However, for simple charges a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice.

In *Apprendi v. New Jersey*, the Supreme Court held that any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury. In *Alleyne*, the Supreme Court extended the holding in *Apprendi* to cover facts that increase a given crime's mandatory minimum penalty. Interpreting *Alleyne*, we have explained that any fact that increases the mandatory minimum sentence for a crime must be admitted by a defendant or be submitted to a jury and found beyond a reasonable doubt.

Here, Lynch's argument that the District Court did not ensure that he understood the nature of the charges against him almost entirely relies on his assertion that the factual summary does not show a conspiracy. However, as we explained above, Lynch has not shown that the District Court plainly erred in finding that the factual basis was sufficient. Because the factual summarization presented to the court furnished a sufficient factual basis, and because the court ensured that Lynch understood and agreed that the government could prove the facts contained in the summary, Lynch's argument fails.

To the extent that Lynch otherwise argues that the District Court did not ensure that he understood the charges against him, the record shows that the District Court explained that, to be found guilty of conspiracy to possess with intent to distribute a substance containing methamphetamine, the government had to prove that two or more people came to a mutual understanding to commit an unlawful act, that Lynch knowingly and intentionally joined the plan, and that more than 50 grams of a substance containing methamphetamine was involved in the conspiracy. Lynch stated that he understood, and Lynch also stated that he had discussed the charges in the indictment with his attorney and understood them at that point as well. Considering that Lynch graduated from high school and was facing simple charges, and that the court referred Lynch to the elements of the offense and verified that counsel

helped Lynch understand the charges, and taking into account the presumption that a defendant's statements during the plea colloquy are true, the court did not commit plain error under Rule 11.

Lynch's argument regarding *Alleyne* is meritless, as the District Court applied the statutory mandatory minimum sentence based on facts Lynch admitted during the course of his guilty plea. Furthermore, to the extent that he argues that the court plainly erred in not explaining *Alleyne* during the plea colloquy, Lynch has not identified any controlling law requiring the court to do so, and, in any event, Lynch agreed as part of his plea agreement that the enhanced statutory minimum sentence of five years' imprisonment applied. In short, Lynch has not demonstrated that the District Court plainly erred in failing to properly explain the factual basis for his guilty plea.

III.

Lynch additionally appeals his sentence on the ground that the District Court clearly erred by not granting a sentence reduction pursuant to the safety valve provisions of 18 U.S.C. § 3553(f). The government contends that this challenge is barred by the appeal waiver in Lynch's plea agreement. We agree.

We review the validity of a sentence appeal waiver *de novo*. A sentence appeal waiver will be enforced if it was made knowingly and voluntarily. To establish that the waiver was made knowingly and voluntarily, the government must show either that (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver. We have enforced a sentence appeal waiver where the waiver provision was referenced during the defendant's Rule 11 plea colloquy and the defendant agreed that he understood the provision and that he entered into it freely and voluntarily.

An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error. Furthermore, a defendant may waive his right to appeal both constitutional and non-constitutional issues by executing a valid sentence appeal waiver. We have, however, suggested that a valid appeal waiver might not prevent a defendant from appealing a sentence that exceeded the statutory maximum, or from arguing that his equal protection rights were violated because he was sentenced based on an arbitrary classification such as race or religion. Additionally, in extreme circumstances—for instance, if the district court had sentenced the defendant to a public flogging—due process may require that an appeal be heard despite a previous waiver.

21

Pursuant to § 841(b)(1)(B), a defendant who conspires to possess with intent to distribute 50 grams or more of a substance containing a detectable amount of methamphetamine is subject to a statutory penalty of imprisonment for five to forty years. However, under the safety valve provision, the district court shall impose a sentence pursuant to the Sentencing Guidelines without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that five conditions are present. The fifth condition requires that, prior to sentencing, the defendant truthfully provide to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. Although it is the district court's responsibility to determine the truthfulness of the information the defendant provided to the government, the burden of proof on the truthfulness issue lies, of course, with the defendant.

Lynch's safety valve challenge is barred by his sentence appeal waiver. Lynch does not argue that the waiver was not made knowingly and voluntarily. In any event, the District Court specifically questioned him regarding the waiver and he indicated that he understood the provision and entered into it freely and voluntarily.

Because the sentence appeal waiver was made knowingly and voluntarily, Lynch may not appeal his sentence unless an exception applies. None of the three exceptions to the waiver applies here because (1) Lynch's sentence is not beyond the statutory maximum imprisonment term of forty years provided for in § 841(b)(1)(B)(viii) (and is in fact at the statutory minimum); (2) his sentence was within the Guidelines sentence range; and (3) he does not raise a claim of ineffective assistance of counsel.[7]

Lynch also challenges whether he should have been given safety valve relief from the statutory minimum punishment, which he waived the right to challenge. Lynch's argument that the denial of safety valve relief is effectively the same as an upward variance or departure from what his guideline range should have been is unpersuasive. The plain language of the appeal waiver exception applies to upward departures or variances, not their functional equivalents, and the denial of safety valve relief is not an upward departure or variance. To interpret the plea agreement otherwise would mean that any guideline calculation issue could fit the exception, as any alleged error could be said to be the

---

[7] "Although Lynch belatedly attempts to assert ineffective assistance of counsel in his reply brief, the gravamen of his claim is not attorney ineffectiveness but rather district court error." *United States v. Lynch, supra,* 595 Fed.Appx. at 950, n.1.

functional equivalent of an upward variance from the true guideline range.

As for Lynch's argument that the denial of safety relief violated *Alleyne* and due process, we have held that a defendant may waive constitutional arguments, including an *Apprendi* claim, and Lynch has not explained why an *Alleyne* claim is meaningfully different. And in any case, the failure to award safety valve relief does not mean a defendant was sentenced to an enhanced statutory minimum sentence based on a fact not alleged in the indictment and proven beyond a reasonable doubt or admitted by the defendant in pleading guilty. Here, there was no *Alleyne* error because Count One alleged a conspiracy involving 50 grams of a substance containing a detectable amount of methamphetamine, the plea bargain stated that the government could prove 50 grams and that the minimum sentence was imprisonment for five years, and Lynch admitted the factual basis of a conspiracy involving 50 grams. His sentence does not represent the extreme circumstances where he might be permitted to appeal despite his appeal waiver. For the foregoing reasons, we do not review Lynch's sentence and, to the extent this appeal seeks its review, the appeal is dismissed.

AFFIRMED, in part; DISMISSED in part.

*Id.* at 944-951 (all internal quotation marks, citations, brackets and ellipses omitted). The opinion of the Eleventh Circuit, entered on December 29, 2014, was issued as mandate on March 25, 2015 (Doc. 287) and the United States Supreme Court denied Lynch's petition for a writ of certiorari on October 5, 2015 (Doc. 289).

On December 22, 2015, Lynch filed the pending motion to vacate pursuant to 28 U.S.C. § 2255 (Doc. 290, at 13; *see also* Doc. 293) and therein asserts that he was denied effective assistance of trial and appellate counsel (*compare* Doc. 290, at 4 & 5 *with* Doc. 293, 6-48). Lynch contends that his trial attorney provided ineffective assistance in the following instances: (1) trial counsel did not review, analyze, or read the plea agreement and/or the factual resume and, as a result, he did not knowingly and intelligently enter the plea agreement (Doc. 293, at 6-11); (2) trial counsel allowed him to plead guilty to a charge that was not contained in the indictment (*id.* at 11); (3) trial counsel failed to object to untrue statements made by Disa Rivers (*id.* at 11-14); (4) trial counsel failed to

23

object to the government's allegations of the dates involved in the alleged conspiracy (*id.* at 14-15); (5) trial counsel allowed him to agree to an ambiguous waiver section of his plea agreement (*id.* at 15); (6) trial counsel allowed him to plead guilty to a charge—conspiracy to manufacture methamphetamine—for which he is actually innocent (*id.* at 15-18); (7) trial counsel failed to object to the trial court's failure to adjudicate the safety valve issue at sentencing and admitted he did not know how to argue for safety valve relief (*id.* at 18-20); (8) trial counsel failed to investigate and present readily-available mitigating evidence (*id.* at 21-23); (9) trial counsel failed to understand the law in relation to the facts with respect to his polygraph examination (*id.* at 23-28); (10) trial counsel failed to advise him of his options with respect to discovery (*id.* at 29-32); and (11) a conflict of interest adversely impacted trial counsel's performance (*id.* at 33-37). As for appellate counsel, petitioner contends that he provided constitutionally ineffective assistance in the following ways: (1) appellate counsel failed to inform the court that there were two factual resumes (*id.* at 36-39); (2) appellate counsel failed to send him a copy of the brief on appeal before filing it to ensure nothing was omitted (*id.* at 39-40); (3) appellate counsel failed to note that the trial court erred in failing to apply § 5K1.2 of the United States Sentencing Guidelines (*id.* at 40-43); (4) appellate counsel failed to attack the knowing and voluntary nature of the appeal waiver contained in the plea agreement, same resulting in the appellate court's inability to apply the safety valve (*id.* at 43-44); (5) appellate counsel failed to appeal under Federal Rule of Criminal Procedure 32 and U.S.S.G. §6A1.2 , on the basis that trial counsel did not ask for a continuance to review the amended PSR with his client (*id.* at 44-46); (6) appellate counsel misapprehended the Supreme Court's holding in *Alleyne v. United States* in

24

arguing for the withdrawal of the plea agreement (*id.* at 46-48); and (7) appellate counsel failed to obtain his entire case file (*id.* at 48).

<u>**CONCLUSIONS OF LAW**</u>

Section 2255 reads, in relevant part, as follows: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

**A.** <u>**Ineffective Assistance of Counsel Standard**</u>.  In this instance, petitioner's sole argument is that constitutionally ineffective assistance of counsel during pre-plea proceedings, at sentencing, and on appeal entitles him to the relief afforded by 28 U.S.C. § 2255. In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *see also Jones v. United States,* 478 Fed.Appx. 536, 539-540 (11th Cir. Sept. 23, 2011) ("To make a successful claim of ineffective assistance of counsel, a defendant must show that: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced

his defense.").[8] "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." *Demar v. United States*, 228 Fed.Appx. 940, 950 (11th Cir. Jun. 21, 2007) (quotation marks, brackets and citations omitted); *see also Johnson v. Alabama*, 256 F.3d 1156, 1176 (11th Cir. 2001) ("The petitioner bears the burden of proof on the 'performance' prong as well as the 'prejudice' prong of a *Strickland* claim, and both prongs must be proved to prevail."), *cert. denied sub nom. Johnson v. Nagle*, 535 U.S. 926, 122 S.Ct. 1295, 152 L.Ed.2d 208 (2002).[9]

The *Strickland v. Washington* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). The Eleventh Circuit has held that "'counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, as in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial.'" *Carter v. United States*, 288 Fed.Appx. 648, 649 (11th Cir. Aug. 4, 2008), quoting *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984). Moreover, in the context of sentencing following entry of a guilty plea, the court simply considers whether petitioner has established, in accordance with *Strickland, supra*, that his attorney was deficient and that he was

---

[8]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[9]     It is proper in considering claims made by a federal prisoner under § 2255 to look for guidance from cases discussing claims raised by state prisoners under 28 U.S.C. § 2254. *See Hagins v. United States*, 267 F.3d 1202, 1205 (11th Cir. 2001) (citing *Holladay v. Haley*, 209 F.3d 1243 (11th Cir. 2000)), *cert. denied*, 537 U.S. 1022, 123 S.Ct. 545, 154 L.Ed.2d 432 (2002).

prejudiced by this deficiency in performance. *See, e.g., Myers v. United States,* 2009 WL 1505638, *1 (W.D. Pa. May 12, 2009) ("In order for petitioner to succeed on an ineffective assistance of counsel claim, he must prove: (1) that his counsel was deficient; and (2) that he was prejudiced by his counsel's deficiency."), *aff'd,* 364 Fed.Appx. 769 (3rd Cir. 2010), *cert. denied,* 562 U.S. 1191, 131 S.Ct. 1026, 178 L.Ed.2d 848 (2011).

> The performance prong of the ineffective assistance standard entails a deferential review of counsel's conduct. In assessing the reasonableness of counsel's performance, courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[10] Thus, the Sixth Amendment does not require criminal defense attorneys to take a nothing to lose approach and raise every available nonfrivolous defense.

> With respect to prejudice, courts ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. Jul. 12, 2011) (internal quotation marks and citations omitted; footnote added), *cert. denied sub nom. Means v. Tucker,* ___ U.S. ___, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012); *see also Pair v. Cummins,* 373 Fed.Appx. 979, 981-982 & 982 (11th Cir. Apr. 20, 2010) ("The performance prong of an ineffective assistance claim requires the petitioner to show that, considering all the circumstances, his attorney's representation fell below an objective standard of reasonableness. The standard is that of a reasonable attorney, not a paragon of the bar or an Aristotle or a Clarence Darrow. Moreover, judicial review of an attorney's performance is highly deferential, and the court must eliminate the distorting effects of hindsight and evaluate performance from the attorney's perspective

---

[10]    In order to satisfy the first prong, "the petitioner must establish that no competent counsel would have taken the action that his counsel did take[.]" *Hall v. Thomas,* 611 F.3d 1259, 1290 (11th Cir. 2010) (quotation marks and citation omitted).

at the time the challenged conduct occurred. In so doing, the court must indulge a strong presumption that the attorney's conduct was objectively reasonable. A petitioner fails to overcome that presumption if the challenged conduct might be considered sound trial strategy. . . .  Pair must [also] establish prejudice. It is not enough for him to show that his counsel's deficient performance had some conceivable effect on the jury's verdict. Instead, Pair must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (internal quotation marks and citations omitted)). Moreover, it is clear that "vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim."  *Rosado v. Secretary, Dep't of Corrections*, 2010 WL 2976886, *4 (M.D. Fla. Jul. 20, 2010) (citation omitted).

In the context of a claim of ineffective assistance of appellate counsel, the Court's analysis is further guided by recognition of the principles that an appellate attorney "is not ineffective for failing to raise claims 'reasonably considered to be without merit[,]'" *United States v. Nyhuis,* 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 892, 148 L.Ed.2d 799 (2001); *see also Jones v. Secretary, Dep't of Corrections,* 487 Fed.Appx. 563, 568 (11th Cir. Aug. 24, 2012) (same), nor is he required "to raise every 'colorable claim suggested by a client[.]" *Jones v. Barnes,* 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983); *see also Brown v. United States,* 720 F.3d 1316, 1335 (11th Cir. 2013) ("An attorney is not required under the Constitution or the *Strickland* standards to raise every non-frivolous issue on appeal[.]"), *cert. denied,* U.S. ___, 135 S.Ct. 48, 190 L.Ed.2d 53 (2014); *see Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991) (recognizing that appellate advocates do not have to raise every non-frivolous

28

issue on appeal), *cert. denied,* 502 U.S. 1077, 112 S.Ct. 981, 117 L.Ed.2d 144 (1992). Indeed, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986).

Given the two-prong nature of the test for adjudicating ineffective-assistance-of-counsel claims, it can come as no surprise that "'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Johnson, supra,* 256 F.3d at 1176 (citation omitted). When applying the *Strickland* standard, it is clear that courts "are free to dispose of ineffectiveness claims on either of its two grounds." *Oats v. Singletary*, 141 F.3d 1018, 1023 (11th Cir. 1998) (citation omitted), *cert. denied*, 527 U.S. 1008, 119 S.Ct. 2347, 144 L.Ed.2d 243 (1999); *see also Adamson v. United States,* 288 Fed.Appx. 591, 594 (11th Cir. Jul. 29, 2008) ("The defendant must satisfy both prongs of this test to show a Sixth Amendment violation; if the defendant fails to demonstrate one of these prongs sufficiently, we do not need to address the other."), *cert. denied,* 555 U.S. 1010, 129 S.Ct. 526, 172 L.Ed.2d 385 (2008); *Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[O]nce a court decides that one of the requisite showings has not been made it need not decide whether the other one has been.").

**B.** **Ineffective Assistance of Trial Counsel Claims**.  The undersigned considers each of Lynch's ineffective assistance of trial counsel claims in turn and finds all to be without any merit or, as in one instance, barred by the appeal waiver contained in the plea agreement.

      1.    **Plea Agreement/Factual Resume Claim.** Lynch contends that his trial attorney did not review, analyze, and read the plea agreement and/or the factual resume and, as a result, he did not enter the plea agreement knowingly and intelligently. (Doc. 293, at 6-11.) And although petitioner makes this very broad and general attack, he makes clear that what he is concerned about are the drug quantities attributable to him as relevant conduct. (*Id.* at 6-7.) In this regard, Lynch claims—and purports to offer proof (*see* Doc. 293, Exhibits A & B)—that there were two factual resumes signed and dated by the parties, one he purportedly agreed to, which attributed to him 3.1 grams of methamphetamine mixture, and the other—that is, the one contained in the record—which attributed to him 9.7 grams of methamphetamine mixture and substance and 15 grams of methamphetamine ice as relevant conduct. (*See* Doc. 293, at 6-7.) However, the "proof" offered by petitioner is no proof at all inasmuch as the numbers are in no matter different on either page 22 of Exhibits A & B and Lynch has not supplied this Court with a page 22 which attributes to him 3.1 grams of methamphetamine mixture as relevant conduct. The exhibits petitioner has provided contain a redaction of the words on page 21 that "the parties agree;" however, it appears to the undersigned that petitioner himself redacted these words for some reason (*see* Doc. 295, at 18 n. 1 ("For reasons unknown, Lynch has redacted language in both exhibits that was not redacted in the factual resume filed with the court.")). Whatever the reason, petitioner's action does not come close to supplying this Court with a basis for finding (by a preponderance of the evidence) that his trial attorney's performance with respect to the plea agreement and factual resume was somehow

deficient,[11] particularly given that in signing the plea agreement Lynch represented that "the Factual Resume, incorporated herein, is true and accurate in every respect[]" (Doc. 136, at 12) and in entering his plea petitioner represented that the factual resume provided to the Court has his factual resume signed after reading and discussing it with his attorney (Doc. 266, at 4). *See, e.g., United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true[.]").

But even if the undersigned was to "swallow whole" Lynch's position that some unproduced factual resume he signed attributed to him as relevant conduct a mere 3.1 grams of methamphetamine mixture,[12] his attack in this regard cannot bear fruit inasmuch as petitioner makes no argument that the government could not prove that more than 50 grams of methamphetamine mixture and substance was involved in the conspiracy and it was this "fact" that drove petitioner's guilty plea and sentencing proceedings. The Court specifically explained to Lynch during his guilty plea

---

[11] As for petitioner's "additional" purity claim (*see* Doc. 293, at 9-10), the undersigned agrees with the government that "Lynch agreed to the purity of the subject methamphetamine in the factual resume[]" (Doc. 295, at 19, citing Doc. 137, at 22) and, as a consequence, trial counsel "did not err in refusing to raise a meritless argument that was precluded by the terms of the plea agreement and factual resume Lynch signed." (Doc. 295, at 19.)

[12] In his reply brief, petitioner contends that what "appears" to the undersigned and the government as redacted information is not redacted at all but his attempt to "highlight" words on Exhibit A which state "the parties agree" versus the language on Exhibit B which states "the parties do not agree." (Doc. 300, at 6.) Regardless of whether Lynch's representations in his reply brief are true, he offers no proof that he only agreed to 3.1 grams of methamphetamine as relevant conduct and, more importantly, cannot establish deficiency of trial counsel in this regard because the drug amounts attributable to Lynch had no impact on his guilty plea and sentencing in absence of his entitlement to safety-valve relief. In other words, as previously explained by the undersigned, any "mistakes" made with respect to the relevant conduct attributable to Lynch have no import given the Court's determination that petitioner was not entitled to safety-valve relief.

31

proceeding the three elements of conspiracy to possess with intent to distribute methamphetamine that the government had to prove in order to convict him of the charge—including that more than 50 grams of a mixture and substance containing methamphetamine was involved in the conspiracy—and petitioner specifically agreed that the government could prove the facts set forth in the factual resume in support of his guilty plea as a prelude to pleading guilty to the conspiracy charge. (Doc. 266, at 9.) The Court also explained to Lynch, who acknowledged his understanding, that the statutory mandatory minimum sentence was five years (*id.* at 6), the same sentence to which reference was made in the indictment (*see* Doc. 4, at 2 ("The amount of mixture and substance containing methamphetamine involved in the conspiracy exceeds 50 grams; therefore, the defendants are subject to the penalty provisions of Title 21, United States Code, Section 841(b)(1)(B)[13].")). Therefore, by his own admissions, Lynch was fully cognizant of the fact that he was facing the statutory mandatory minimum of 5 years/60 months at sentencing. (Doc. 266, at 6-9.) Indeed, the only avenue for Lynch to "get around" the statutory mandatory minimum of 5 years was to establish his entitlement to safety valve relief. *Compare* 18 U.S.C. § 3553(f) ("[T]he court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—(1) the defendant does not have more than 1 criminal history point, as determined under the

---

[13]     Anyone who conspires to possess with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine "shall be sentenced to a term of imprisonment which may be not less than 5 years and not more than 40 years[.]" 21 U.S.C. § 841(b)(1)(B).

sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.") *with, e.g., United States v. Reid,* 256 Fed.Appx. 317, 321 (11th Cir. Nov. 28, 2007) ("Under the safety-valve provision, a district court shall impose a sentence without regard to any statutory mandatory minimum if a defendant convicted of certain drug crimes satisfies certain criteria[.]"), *cert. denied,* 553 U.S. 1075, 128 S.Ct. 2524, 171 L.Ed.2d 804 (2008). Thus, safety-valve relief was the "lynchpin" for petitioner with respect to garnering a sentence below the statutory mandatory minimum and when the Court determined that Lynch did not qualify for safety-valve relief (Doc. 267, at 7), the statutory mandatory minimum (5 years/60 months) was the required sentence (*id.*). *United States v. Castaing-Sosa,* 530 F.3d 1358, 1360 (11th Cir. 2008) ("It is well-settled that a district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the government filed a substantial assistance motion pursuant to 18 U.S.C. § 3553(e) and

U.S.S.G. §5K1.1 or the defendant falls within the safety-valve of 18 U.S.C. § 3553(f)."); *see United States v. Buenrostro,* 187 Fed.Appx. 922, 926 (11th Cir. Jun. 29, 2006) ("We have held that, despite *Booker's* remedial holding that the Sentencing Guidelines are merely advisory, district courts remain bound by statutory minimum sentences."). Accordingly, this constitutes the "long way around" to explain that the drug amounts attributable to Lynch had no impact on his guilty plea and sentencing in absence of his entitlement to safety-valve relief. Counsel was simply not deficient in any regard with respect to the plea agreement, factual resume, guilty plea proceeding, or sentencing.

> **2.    Plea of Guilty to a Charge not Contained in the Indictment**?

Lynch contends that though he was indicted on a charge of conspiracy to possess with intent to distribute methamphetamine, trial counsel allowed him to plead guilty to conspiracy to manufacture methamphetamine, as stipulated in the plea agreement. (*See* Doc. 293, at 11.) This allegation of ineffective assistance of counsel is verifiably incorrect inasmuch as though the plea agreement contains a typographical error with respect to identification of the charge to which petitioner was entering his guilty plea as charged in the indictment (*see* Doc. 136, at 1), the Factual Resume (Doc. 137), which Lynch signed on the same day as the plea agreement (*compare id.* at 22 *with* Doc. 136, at 12) and which the plea agreement incorporates by reference (Doc. 136, at ¶ 8), specifically identified the elements of the offense charged in Count One of the indictment, that is, conspiracy to possess with intent to distribute methamphetamine (Doc. 137, at 1). More importantly, at the change of plea hearing on October 29, 2013, Lynch entered a guilty plea to conspiracy to possess with intent to distribute methamphetamine (Doc. 266, at 9), the very charge set forth in Count One of the

superseding indictment (*compare id. with* Doc. 4). And, finally, as noted by the Eleventh Circuit, "[p]ursuant to a plea agreement, Lynch pled guilty to Count One[]" of the indictment, that is, conspiracy to possess with intent to distribute methamphetamine. *United States v. Lynch, supra,* 595 Fed.Appx. at 944. The misidentification of the charge in one paragraph of the plea agreement does not "overcome" petitioner's plea of guilty, under the plea agreement, to Count One of the indictment charging conspiracy to possess with intent to distribute methamphetamine. Accordingly, trial counsel was not in any manner deficient for failing to bring this "misidentification" to the Court's attention given that petitioner, in fact, pled guilty to the offense charged in Count One of the indictment.

3. **Alleged Untrue Statements by Disa Rivers**. Petitioner contends that his trial attorney provided ineffective assistance in failing to object to untrue statements made by Disa Rivers to the government during her debriefing on October 9, 2013. (Doc. 293, at 11-14.) According to petitioner, Rivers "lied" about: (1) the length of time she had known him; (2) how much methamphetamine he sold to her during 2012; and (3) the number of trips he made out-of-town to purchase methamphetamine. (*Id.* at 11-13.) Lynch contends that the government relied on these "lies" to paint a picture of him in the factual resume as a dealer and distributor of methamphetamine who drove north of Mobile once a week to pick up methamphetamine ice from suppliers in Montgomery and Birmingham. (*Id.* at 13.) Lynch then points to other evidence in the record respecting some of his co-defendants' cases—that is, Rivers' PSI, Haley Jordan's factual resume, the government's §5K1.1 motion as to Thomas Turner, and the record of Jordan's sentencing hearing—and argues that "when all of their 'evidence' is pulled together[,] the Government is all over the board with a bevy of contradicting

35

statements, distorted information and perjurious testimony all used to perpetuate a false impression of the Defendant and justify their prosecution of him." (*Id.* at 14.) Lynch concludes this portion of his brief by contending that had his trial attorney lodged objection to the "blatant and overt errors committed by the AUSA[]" the Court would have "gotten a true and reliable picture of what actually took place[]" and "realized that at most Mr. Lynch participated in a mere buyer-seller transaction and not a broad based drug manufacturing ring[14] like the AUSA claimed." (*Id.* at 14.)

The "deficiency" prong of this ground of ineffective assistance of trial counsel, however, is eviscerated by Lynch's admission in his plea agreement, and again during his plea colloquy, that the factual resume was true and correct. (*Compare* Doc. 136, at 12 *with* Doc. 266, at 4 & 9.) In other words, counsel was not deficient in failing to object to matters contained in the factual resume that the petitioner himself agreed were true and correct.[15] Moreover, petitioner's prejudice argument fails inasmuch as he contends that this Court would have realized that there was no factual basis for his plea to the conspiracy charge, a contention refuted by the Eleventh Circuit's determination that "there was ample evidence for the court to reasonably find that he was guilty of conspiracy to possess with intent to distribute a substance containing methamphetamine." *Lynch, supra,* 595 Fed.Appx. at 946-947.

---

[14]      The undersigned would simply note that the AUSA never claimed that Lynch was a participant in a drug manufacturing ring; instead, petitioner was indicted, plead guilty to, and was convicted and sentenced for conspiring to possess with intent to distribute methamphetamine.

[15]      As for all of the "co-defendant evidence" to which the Court is directed to by petitioner, the undersigned would simply note that knowledge of such evidence cannot be ascribed to his trial attorney.

4.   <u>**Dates Involved in the Conspiracy.**</u>   Petitioner contends that trial counsel provided ineffective assistance when he failed to object to the government's allegations of the dates of his involvement in the conspiracy. (Doc. 293, at 14.) "The Government alleged that Lynch was involved in the alleged conspiracy from 2010 until June 21, 2013. Lynch did not come into the picture until March 2012." (*Id.*) A review of the indictment and factual resume in this case, however, betrays no suggestion or allegation by the government that Lynch became involved in the conspiracy in 2010 (*compare* Doc. 4, at 1 & 3-6 *with* Doc. 137, at 1-22); instead, these documents irrefutably date petitioner's involvement in the conspiracy to March of 2012 (*compare* Doc. 4, at 1 & 3-6 *with* Doc. 137, at 10-11). *Cf. United States v. Reeves,* 742 F.3d 487, 498 (11th Cir. 2014) ("The government need not prove that a defendant participated in every stage of the conspiracy or had direct contact with each of the other alleged co-conspirators."). Accordingly, counsel was not deficient in failing to assert an objection that simply did not exist.[16] *See Rosado, supra,* at *4 (unsupported claim cannot support a claim of ineffective assistance of counsel).

5.   <u>**Waiver Section of Plea Agreement.**</u>   Petitioner contends that trial counsel was ineffective in allowing him to agree to an ambiguous plea agreement waiving his rights. (Doc. 293, at 15.) The entirety of petitioner's argument in this regard consists of the following:

> In the "waiver" section of Lynch's plea agreement, at ¶ 21 it specifically states that "the defendant . . . waives the right to file . . . a motion to

---

[16]   Moreover, the undersigned agrees with the government that Lynch cannot establish prejudice in this regard since his five-year sentence was "driven" by the amount of methamphetamine he admitted the government could prove was involved in the conspiracy and his inability to establish his entitlement to "safety valve" relief, not the length of his involvement in the conspiracy.

vacate, set aside, or correct sentence under 28 U.S.C. § 2255." (Doc. 136, p.10). However, further down the page it notes that "the defendant further reserves the right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to 28 U.S.C. § 2255." Id. Ironically, the accepted (and possibly sole) remedy of a motion under section 2255 is "to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

(Id.) The waiver section of the plea agreement basically reads as petitioner has described (*compare id. with* Doc. 136, at 10); however, there is nothing ambiguous about the waiver section given that it explained that one *exception* to the limited waiver of right to appeal and waiver of collateral attack—that is, an exception to Lynch's "general" recognition that he was waiving his right to file any direct appeal or any collateral attack, including a § 2255 motion—was petitioner's "right to claim ineffective assistance of counsel in a direct appeal or a petition filed pursuant to 28 U.S.C. § 2255[]" (Doc. 136, at 10), which is exactly what petitioner is now doing. Accordingly, Byrd was not ineffective for failing to assert a meritless argument, *cf. Tejada v. Dugger,* 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that claims of ineffective assistance of counsel are subject to dismissal where they consist of "'contentions that in the face of the record are wholly incredible.'"), *cert. denied,* 502 U.S. 1105, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992), and certainly petitioner suffered no prejudice given that he has zealously taken advantage of the instant collateral petition and ability to litigate his many claims of alleged ineffective assistance of counsel.

6.    **Actual Innocence.**  Lynch next contends that trial counsel was constitutionally ineffective in allowing him to plead guilty to a charge for which he was actually innocent. (*See* Doc. 293, at 15-18.) And while petitioner makes one

reference to a "manufacturing" charge (*id.* at 15),[17] it is clear that he is squarely attacking counsel's performance with respect to allowing him to plead guilty to the charge of conspiracy to possess with intent to distribute methamphetamine (*see id.* at 15-18) inasmuch as he claims that he "merely had a buyer-seller relationship with the person he bought drugs from" (*id.* at 16) and was not involved in a conspiratorial agreement to distribute methamphetamine (*see id.* at 15-18). The problem with Lynch's argument in this regard, however, is that the Eleventh Circuit specifically addressed the buyer-seller transaction versus conspiratorial agreement dichotomy and determined that there was ample evidence in the record of petitioner's guilt of conspiracy to possess with intent to distribute methamphetamine. *See Lynch, supra,* 595 Fed.Appx. at 946-947. Because Lynch is not actually, factually, innocent of conspiracy to possess with intent to distribute methamphetamine, *see id.,*[18] trial counsel was not deficient in "allowing" petitioner to plead guilty to Count One of the indictment.

      **7.**    **Safety Valve Relief.** Lynch contends that his trial attorney was constitutionally deficient when he abandoned his client by failing to object to the trial court's failure to adjudicate the safety valve issue at sentencing and admitting that he

---

[17]    As previously set forth, petitioner pled guilty to conspiracy to possess with intent to distribute methamphetamine, as alleged in Count One of the indictment, not conspiracy to manufacture methamphetamine.

[18]    To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Certainly, Lynch has not come forward with any new reliable evidence that establishes his actual (factual) innocence of conspiracy to possess with intent to distribute methamphetamine. Therefore, his claim of actual innocence is not credible.

did not know how to argue for safety valve relief. (Doc. 293, at 18-20.) Petitioner contends his receipt of a 60-month mandatory minimum statutory sentence presumptively establishes prejudice. (*See id.* at 20.)

Lynch's entitlement to safety valve relief was central in this case and, contrary to petitioner's generalized framing of the issue, *supra, it* is clear that this Court did "adjudicate" the safety valve issue by specifically determining that Lynch was not entitled to safety valve relief. (Doc. 267, at 7; *see also id.,* at 5 ("THE COURT: Well, I'm confused, because first you said he failed the polygraph test and then you said he passed the polygraph.") & 5-6 ("THE COURT: Well, how do you explain the difference between what the government contends he said in a taped conversation when the offense was occurring and what he apparently has told them.").) And, also contrary to Lynch's assertions, his trial attorney did argue for safety valve relief, despite at the onset "admitting" he did not know how to argue for such relief in absence of the government acknowledging that his client "gave the whole truth." (*Id.* at 3.)[19]  In particular, defense counsel pointed out that his client did not admit that he lied during his polygraph examination, Lynch's statement in this regard being pure sarcasm, and that despite the fact that petitioner had relayed the same truthful story to the government since being arrested (in his debriefing and during the polygraph examination), a story admittedly at odds with what counsel couched as petitioner's

---

[19]    Such "admission" is not patent deficiency; instead, it is nothing more than counsel's recognition of the statutory language of 18 U.S.C. § 3553(f), which provides that "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, **after the Government has been afforded the opportunity to make a recommendation**, that . . . ." *Id.* (emphasis supplied).

"puffing" contained in some of the tape-recorded transactions at issue,[20] the government chose instead to believe the untrue statements of some of his co-defendants. (*Id.* at 4-6.)

In light of the fact that trial counsel did argue petitioner's entitlement to safety valve relief, the undersigned perceives no abandonment or deficiency in performance based upon petitioner's apparent position that counsel could have made a better argument or "demanded" more of the Court. *Cf. Rosado, supra,* at *4 (unsupported claims cannot support an ineffective assistance of counsel claim). Moreover, Lynch simply has not established prejudice in this regard because there is nothing to suggest that had counsel made a different argument that safety valve relief would have been granted. The fifth requirement for safety valve relief is that "not later than the time of the sentencing hearing,  the defendant has *truthfully* provided to the Government *all* information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan[.]" 18 U.S.C. § 3553(f)(5) (emphasis supplied); *see also* U.S.S.G. § 5C1.2(5) (same). This language places on a defendant "an affirmative responsibility to 'truthfully disclose to the government all information and evidence that he has about the offense and all relevant conduct.'" *United States v. Johnson,* 375 F.3d 1300, 1302 (11th Cir. 2004), quoting *United States v. Yate,* 176 F.3d 1309, 1310 (11th Cir. 1999) (other citation omitted); *see also id.* ("The burden is on the defendant to show that he has met all of the safety valve factors."). Here, Lynch has set forth no plausible basis for the Court to have found this fifth

---

[20]     "So his statements, the truth to the polygraph [examiner] and debriefing, are inconsistent with his bolstering his credibility or his size or importance in the meth community because he talked a big game and then was telling the truth: 'Hey, I'm not that big a deal.'" (*Id.* at 6.)

element in his favor at the time of his sentencing (but for counsel's alleged deficiency), given the contents of the recordings of several of the subject transactions in which petitioner indicated that he had a connection named Shorty in the Evergreen/Prattville/Montgomery area of the State from whom he purchased methamphetamine (*see* Doc. 267, at 4 & 6) and the results of the polygraph examination, which indicated deception relative to "Shorty" (*see* Doc. 293, Exhibit J, Polygraph Report). Accordingly, prejudice is absent.

        **8.**   <u>**Mitigating Evidence.**</u>  Lynch next contends that his trial attorney "failed to investigate and present readily available mitigating evidence and thus the cumulative effect of his errors were (sic) greater than the prejudice caused by any individual error." (Doc. 293, at 21.) Petitioner "identifies" the "mitigating" evidence, as follows: "For example, trial counsel failed to make sure that there was only one factual resume. In another instance, Lynch's trial counsel admits in open court: 'I've never been in this position before, but I don't know how to argue for [the] safety valve . . . .' (Doc. 267, p.3). As previously asserted, the indictment charged one offense, while the plea agreement had Lynch pleading guilty to a totally different offense. And the conspiracy charge was carried out against Lynch using Government informants as co-conspirators." (*Id.*)[21]

        The undersigned has previously considered and found no merit to the individual claims of alleged ineffective assistance of counsel just identified that

---

[21]     Later, Lynch also makes reference to his attorney's failure to request a continuance to discuss the most current PSI with his client. (*Id.* at 22.) As previously established, a continuance was not necessary, and counsel was not deficient in failing to ask for one, since the only change in the PSI in the possession of petitioner and his attorney was a change—giving petitioner credit for acceptance of responsibility—that inured to petitioner's benefit.

Case 1:13-cr-00154-CG-C   Document 306   Filed 08/05/16   Page 43 of 57


"collectively" form the basis of this claim of ineffective assistance of counsel. Lynch's "repackaging" of some of his previously-asserted claims as a "collective" claim need fail inasmuch as the lack of merit of each of his individual claims leaves no "building blocks" to support this "collective" claim. Suffice it to say that since counsel was not deficient with respect to any of the individual claims referenced above, he was not deficient as to those claims "collectively."

9. **Polygraph Examination.** Petitioner next argues that his trial attorney failed to understand the law in relation to the facts with respect to his polygraph examination. (Doc. 293, at 23; *see also id.* at 23-28.) Indeed, he suggests that his attorney failed to understand that the results of the examination could be used against him in court and to advise him accordingly. (*Id.* at 23.) Lynch then proceeds to expound at length on how his attorney—had he been effective—could have challenged the results of the polygraph examination. (*See id.* at 23-28.)

This claim of ineffective assistance of counsel is simply refuted by the record. As even petitioner concedes (*see id.* at 23), his plea agreement specifically provided that "the results of any polygraph examination" could be used by the United States in its evaluation of whether there had been substantial assistance and that those results would be admissible at sentencing (*see* Doc. 136, at 7). As heretofore explained in no small detail, this is the same plea agreement that Lynch advised the Court during his change of plea hearing that he read and discussed with counsel before he signed it and the terms of which he understood. (Doc. 266, at 4.) Accordingly, the record does not support Lynch's spurious contention that his attorney did not understand that the results of the polygraph examination could be used against him at sentencing. More importantly, given the clear contents of the plea agreement, trial counsel was not

deficient in failing to raise an argument precluded by the terms of the plea agreement.[22]

      **10.**   **Discovery.**   Lynch contends that his trial attorney was constitutionally ineffective for failing to advise him of his options with respect to discovery. (Doc. 293, at 29-32.) Petitioner then takes the Court on a journey regarding how the discovery that was produced to him actually suggests a total lack of evidence with respect to certain counts of the indictment, or at least conflicting evidence, had his attorney inspected and examined it (*see id.* at 29-32),[23] and that his attorney would have gleaned that he "was just a small time user who allegedly sold 2.6 grams of drugs and was not a member of any conspiracy." (*Id.* at 32.)

      It is the undersigned's opinion that the waiver effect of petitioner's voluntary plea applies to this claim of ineffective assistance of counsel claim because this claim does not directly implicate the validity of the plea itself. *Compare Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973) ("[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the

---

[22]     In addition, prejudice is lacking. Petitioner has simply not established that he would have been granted safety valve relief had the results of the polygraph examination not been considered given the remaining "disconnect" between Lynch's comments to at least one of his co-defendants during the course of the conspiracy and what he later told the government during debriefings.

[23]     The undersigned need note that the counts of the indictment that Lynch focuses on with respect to this claim (Counts Five, Six, and Seven) (Doc. 293, at 29-31) were not counts to which he pled guilty.

guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.") *with United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir.) ("A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant. This includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary."(internal citation omitted)), *cert. denied,* 531 U.S. 919, 121 S.Ct. 282, 148 L.Ed.2d 203 (2000) and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (finding that guilty plea waiver of rights includes a claim of ineffective assistance of counsel based on a pre-plea event).  Indeed, Lynch's "take" on the discovery and suggestion that counsel did not examine the discovery—particularly as it relates to counts to which petitioner did not plead guilty— is nothing more than mere "hope" and does not begin to establish, from a factual standpoint, that his plea was involuntary;[24] therefore, this pre-plea claim of ineffective assistance of counsel is waived and precluded by the negotiated plea.

       **11.**    **Conflict of Interest.**  Lynch's final claim of ineffective assistance of trial counsel is that a conflict of interest—namely, counsel's friendship with Deputy Raylene Busby—adversely affected trial counsel's performance. (Doc. 293, at 33-35.) Petitioner "fills" this portion of his brief with extraneous and irrelevant allegations about the circumstances of his initial encounters with Busby on April 18, 2012 (*id.* at 34-35), which lead him to the following conclusion: "Rather than to simply acquiesce to 'whatever' the Government said, the alternative strategy would have been for counsel

---

[24]      It bears repeating that the Eleventh Circuit determined that there was ample evidence in the record of petitioner's guilt of conspiracy to possess with intent to distribute methamphetamine. *See Lynch, supra,* 595 Fed.Appx. at 946-947.

to mount a vigorous defense objecting to the numerous misstatements[25] of the
Government. Likewise, competent counsel would have agreed to proceed to trial.
However, whether in recognition of his 'good friend Raylene Busby' or in an effort to
pressure Lynch to pay more money for a 'better defense', the results were the same.
Lynch's attorney was conflicted in providing a reasonable and meaningful defense."
(*Id.* at 35.)

In *McCorkle v. United States*, 325 Fed.Appx. 804 (11th Cir. Apr. 28, 2009)
(unpublished), *cert. denied*, 558 U.S. 865, 130 S.Ct. 176, 175 L.Ed.2d 111 (2009), the
Eleventh Circuit described the burden that must be carried by a petitioner to establish
ineffective assistance of counsel based on a conflict of interest.

> "[A] defendant must show first, that his attorney had an actual conflict of
> interest, and second, that the conflict adversely affected counsel's
> performance." . . . "An 'actual conflict' of interest occurs when a lawyer
> has 'inconsistent interests.'" . . . The conflict cannot be merely possible,
> speculative, or hypothetical.
>
> To distinguish between actual and possible conflicts of interest, we
> 'will not find an actual conflict of interest unless [the defendant] can point
> to specific instances in the record to suggest an actual conflict or
> impairment of [his] interests." The defendant "must make a factual
> showing of inconsistent interests and must demonstrate that the attorney
> made a choice between possible alternative causes of action, such as
> eliciting (or failing to elicit) evidence helpful to one client but harmful to
> [himself]. If he did not make such a choice, the conflict remain(s)
> hypothetical." "To prove adverse effect, a defendant needs to
> demonstrate: (a) that the defense attorney could have pursued a plausible
> alternative strategy, (b) that this alternative strategy was reasonable, and
> (c) that the alternative strategy was not followed because it conflicted with
> the attorney's external loyalties."

*Id.* at 808 (internal citations omitted).

---

[25]   The only "misstatement" petitioner identified as having been made by Busby is
her alleged comment that the searches of petitioner's vehicle and residence produced drugs and
drug paraphernalia. (*Compare id. with id.* at 33.)

In this instance, Lynch has not and cannot show that Byrd was burdened by an actual conflict of interest in this matter. Petitioner's insurmountable problem in this regard is that he cannot establish inconsistent interests or point to any instance in the record where Byrd made a choice between possible alternative causes of action, such as eliciting (or failing to elicit) evidence helpful to one of his clients but harmful to petitioner, as Byrd only represented petitioner and Lynch makes no claim that Byrd made a choice in this case that was helpful to another one of his clients in some other case. In addition, Byrd's failure to countermand—at arraignment—the allegedly false statement of Deputy Raylene Busby that a search of Lynch's residence and vehicle produced drugs and drug paraphernalia could never serve as a suggestion of an actual conflict of interest given the preliminary and non-binding nature of the proceeding. Because Lynch has not and cannot establish that Byrd labored under an actual conflict of interest, this ineffective assistance of counsel claim fails.

     **C.**    **Ineffective Assistance of Appellate Counsel Claims.**   Lynch's six claims of ineffective assistance of appellate counsel have no merit.

       **1.**    **Two Factual Resumes.**   Lynch contends that his appellate attorney was constitutionally ineffective for failing to inform the Eleventh Circuit that there were two factual resumes. (Doc. 293, at 36-39.) This argument by petitioner is all but identical to the argument asserted against trial counsel and, therefore, similarly fails. Although it does not appear to the undersigned that Lynch has firmly established that there were two factual resumes, even if two resumes existed the undersigned would still find no deficiency on appellate counsel's part given Lynch's admission in open court on the record during his change of plea hearing that the factual resume provided to him by the

Court was the factual resume he signed after reading and discussing it with his attorney (Doc. 266, at 4). *See Medlock, supra,* 12 F.3d at 187.

   **2.   Copy of the Appellate Brief.**   Lynch claims that he asked his appellate attorney to send him a copy of his appellate brief so that he could ensure that nothing was left out before it was filed in the Eleventh Circuit but that this did not happen. (Doc. 293, at 39.) Lynch appears to suggest that had appellate counsel sent him the appellate brief, he would have ensured that counsel attacked on appeal trial counsel's performance vis-à-vis the two factual resumes and the most current PSI. (*See id.* at 39-40.) The undersigned simply cannot find appellate counsel deficient in this regard given clear recognition that "[a]n attorney is not required under the Constitution, or the *Strickland* standard, to raise every non-frivolous issue on appeal." *Brown, supra,* 720 F.3d at 1335; *see also Smith v. Murray, supra,* 477 U.S. at 536, 106 S.Ct. at 2667 ("'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.").[26]

   **3.   §5K1.2 of the Sentencing Guidelines.**   Petitioner contends that appellate counsel was constitutionally deficient for failing to note that the district court erred in failing to apply §5K1.2 of the Sentencing Guidelines. (Doc. 293, at 40 & 43.) It is Lynch's position that his inability to produce information that the government could use was utilized against him as an aggravating sentencing factor in violation of

---

[26]   Moreover, petitioner has not established prejudice because he has not established that the Eleventh Circuit would have granted him relief on the basis of trial counsel's performance, as opposed to simply noting, as it is wont to do, that trial counsel's perform should be the subject of a collateral petition (like the instant petition).

U.S.S.G. §5K1.2 and that appellate counsel should have brought this "error" to the Eleventh Circuit's attention.  (*Id.* at 42.)

Petitioner correctly notes (*id.*) that §5K1.2 of the Sentencing Guidelines provides that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." U.S.S.G. §5K1.2. However, as the government points out (Doc. 295, at 34), §5K1.2 applies "only to *departures* from the guideline range[,]" *United States v. Burgos,* 276 F.3d 1284, 1291 n.8 (11th Cir. 2001) (emphasis in original); *see also United States v. Nunez-Rodriguez,* 92 F.3d 14, 22 (1st Cir. 1996) ("[G]iven its location in the guidelines section dealing with 'departures,' section 5K1.2 clearly forbids reliance on a defendant's failure to identify accomplices for an upward *departure.*" (emphasis in original)), and since the sentencing transcript makes clear that the Court did not impose an upward departure (based on failure to cooperate) when sentencing Lynch (*see* Doc. 267, at 7-9), appellate counsel did not err in raising this meritless issue on appeal, *Nyhuis, supra,* 211 F.3d at 1344 (finding appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit).[27]

**4.    Appeal Waiver Contained in the Plea Agreement.**  Lynch claims that his appellate attorney erred in failing to appeal the knowing and voluntary nature of the appeal waiver contained in the plea agreement. (Doc. 293, at 43-44.) In support of

---

[27]    Furthermore, it is clear that "[u]nder the safety-valve provision, a district court shall impose a sentence without regard to any statutory mandatory minimum if a defendant convicted of certain drug crimes satisfies certain criteria[,]" U.S.S.G. § 5C1.2, and also give a reduction in the defendant's offense level, U.S.S.G. § 2D1.1(b)(6)." *Reid, supra,* 256 Fed.Appx. at 321. However, the defendant bears the burden of proving his entitlement to such relief, *id.,* and where, as here, the defendant offers no such proof, he cannot lay such failure at the feet of the Court by attempting to transform his failure of proof into a non-existent aggravating sentencing factor/upward departure.

this claim, petitioner states the following: "[T]here was more than one factual resume[,] the one he understood and thought he had, and another one ostensibly slipped in by the AUSA, thus render[ing] the plea agreement unenforceable. As such, entry into such an agreement is void from the beginning. . . . Lynch would have insisted on proceeding to trial had he known the contents of the 'other' factual resume." (*Id.* at 43-44 & 44.)

Lynch's appellate attorney was not deficient in failing to appeal the knowing and voluntary nature of the appeal waiver contained in the plea agreement, particularly in light of petitioner's clear statements during the plea colloquy that he fully understood the scope of the sentence appeal waiver (Doc. 266, at 7-8). *See Nyhuis, supra,* 211 F.3d at 1344 (recognizing that an appellate attorney is not deficient if he fails to raise claims reasonably considered to be without merit). Besides, as noted by the Eleventh Circuit, "the sentence appeal waiver was made knowingly and voluntarily." *Lynch, supra,* 595 Fed.Appx. at 950.

        **5.**      <u>**Rule 32 and § 6A1.2 of the Sentencing Guidelines.**</u> Lynch contends that appellate counsel was deficient in failing to appeal under Rule 32 of the Federal Rules of Criminal Procedure and §6A1.2 of the Sentencing Guidelines when trial counsel failed to seek a continuance so he could review the amended PSI with his client. (Doc. 293, at 44-46.) While Rule 32 and §6A1.2 of the Sentencing Guidelines certainly provide that any addendum to the presentence report must be submitted to the Court and the parties seven days before sentencing, *compare* Fed.R.Crim.P. 32(g) *with* U.S.S.G. §6A1.2(c), and Rule 32(i)(1)(A) requires the Court to verify at sentencing that the defendant and his attorney have read and discussed the presentence report and any addendum thereto, *id.*, petitioner has simply not established that he was prejudiced by the failure to discuss the final addendum of the report with his attorney

given that the only change made to the report was favorable to him. Petitioner's conclusory statements to the contrary notwithstanding (*see* Doc. 293, at 45), the Probation Officer at no time indicated that he was entitled to safety valve relief and that was why this issue took center stage at his sentencing.[28] Indeed, the only section of the report that the Probation Officer changed was that section which accorded petitioner "points" for acceptance of responsibility. This, of course, was a favorable change for Lynch and did not require a recess for counsel to discuss with petitioner. Thus, no prejudice accrued to Lynch and appellate counsel was not deficient in failing to raise this meritless issue on appeal. *See, e.g., Rosado, supra,* at *4 (recognizing that unsupported claims cannot support an ineffective assistance of counsel claim).

      **6.**     ***Alleyne v. United States*.** Petitioner contends that his appellate attorney was deficient in misapprehending the Supreme Court's holding in *Alleyne v. United States,* ___U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013) with respect to arguing for withdrawal of the guilty plea and, as a result, he was prejudiced. (Doc. 293, at 46-48.) According to Lynch, his appellate attorney "either failed to understand" the Supreme Court's holding in *Alleyne* or, otherwise, "never read the whole case" because, had he understood the holding, he would not have relied on *Alleyne* in

---

[28]     As previously indicated, the key in this case was Lynch's inability to establish his entitlement to safety valve relief as, in absence of such a showing, the Court was required to sentence petitioner to the statutory minimum of 60 months (that is, 5 years), regardless of his entitlement to credit for acceptance of responsibility, etc. And there is simply no credence in the record before the undersigned (*see* Docs. 172 & 180-181) to Lynch's conclusory suggestion that he was ever given "safety valve" credit by the Probation Office; instead, petitioner is simply "grasping hold" of the government's mistaken objection that he had received an adjustment for safety valve relief (*compare* Doc. 175, at ¶ 1 *with* Doc. 181). As explained by the Probation Officer, petitioner did not receive a safety valve adjustment (Doc. 181) and nothing about ¶ 28 of either Presentence Investigation Report can be read to suggest that he received such an adjustment at any time (*compare* Doc. 172, at ¶ 28 *with* Doc. 180, at ¶ 28).

arguing for withdrawal of the guilty plea. (*Id.* at 46-47.) Petitioner, in a conclusory manner, posits that appellate counsel's decision to rely on *Alleyne* cannot be considered a strategic decision and, as a result, the result of the proceeding would have been different because he should have raised other constitutional violations (e.g., Rules 11 and 32). (*Id.* at 47-48.)

The undersigned agrees with the government that petitioner cannot establish prejudice. In other words, petitioner has not and cannot show that the result of his appeal would have been different had counsel not raised the *Alleyne* claim because the Eleventh Circuit rejected all of Lynch's arguments on appeal. *See Lynch, supra,* 595 Fed.Appx. at 944-950. Lynch's prejudice argument is not aided by his citation to Rules 11 and 32 of the Federal Rules of Criminal Procedure. As explained above, there was no viable Rule 32 argument to be made on appeal. Moreover, petitioner does not explain what aspect of Rule 11 appellate counsel could have been successful in arguing that was not rejected by the Eleventh Circuit in its decision. *Compare* 595 Fed.Appx. at 945-947 (rejecting Lynch's Rule 11 argument that there was not a sufficient factual basis for the plea) *with id.,* at 947-949 (in rejecting Lynch's *Alleyne* argument, the court set forth the three core principles of Rule 11 and concluded that the district court did not commit plain error under the rule with respect to the second core principle of ensuring that petitioner understood the nature of the charges against him, "[c]onsidering that Lynch graduated high school and was facing simple charges, and that the court referred Lynch to the elements of the offense and verified that counsel helped Lynch understand the charges, and taking into account the presumption that a defendant's statements during the plea colloquy are true[]"). Since prejudice is lacking, this claim of ineffective assistance of appellate counsel necessarily fails. *See Oates, supra,* 141 F.3d at

1023 (recognizing that courts "are free to dispose of ineffectiveness claims on either of its two grounds.").

       **7.**   **Case File.**   Lynch's final "attack" on appellate counsel's performance is his claim that appellate counsel was deficient in obtaining his entire case file. (Doc. 293, at 48.) In making this claim, petitioner incorporates by reference Claims C, G, I, J & K of his claims of ineffective assistance of trial counsel and then assumes appellate counsel's deficiency in this regard by conclusorily arguing that he suffered prejudice because mitigating evidence could have (but was not) submitted to the Court. (*Id.*)

       Petitioner simply has not identified what specific mitigating evidence was not submitted to the Eleventh Circuit by appellate counsel and since the undersigned has specifically determined that trial counsel did not deficient in any matter as set forth in Claims C, G, I, J & K, the Court fails to perceive what mitigating evidence could have been offered by appellate counsel to the Eleventh Circuit. Accordingly, this conclusory allegation of ineffective assistance of appellate counsel fails. *See Rosado, supra,* at *4.[29]

---

[29]    Petitioner is not entitled to an evidentiary hearing in this case because his allegations are either affirmatively contradicted by the record or, otherwise, even taking the facts he states as true, same would not entitle him to relief. *Aron v. United States,* 291 F.3d 708, 714-715 (11th Cir. 2002) ("[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.' . . . Although we have stated that a district court is not required to hold an evidentiary hearing where the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, no such circumstances are present here." (internal citations omitted)); *see also United States v. Bejacmar,* 217 Fed.Appx. 919, 921 (11th Cir. Feb. 15, 2007) ("[I]f the petitioner's allegations are affirmatively contradicted by the record, or the claims are patently frivolous, a district court is not required to hold an evidentiary hearing."); *see Tejada, supra,* 941 F.2d at 1559 ("A petitioner is *not* entitled to an evidentiary hearing . . . when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (internal quotation marks omitted)); *cf. Lynn v. United States,* 365 F.3d 1225, 1239 (11th Cir.) ("Because the 1999 affidavits submitted by Lynn amount to nothing more than mere conclusory allegations, the district court was not required to hold an evidentiary hearing (Continued)

**D.** **Certificate of Appealability**.   In consideration of the foregoing, the Magistrate Judge recommends that the Court deny Lynch's motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. Moreover, pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Here, Lynch's habeas petition is being denied, in one instance, on procedural grounds without reaching the merits of the constitutional claim, such that "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]" *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000), but primarily on the merits, such that a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" *id.*; *see also id.* at 483-484,

---

on the issues and correctly denied Lynn's § 2255 motion."), *cert. denied,* 543 U.S. 891, 125 S.Ct. 167, 160 L.Ed.2d 154 (2004).

120 S.Ct. at 1603-1604 ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"); *see Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Inasmuch as petitioner has waived his "discovery" ineffective assistance of trial counsel claim in light of his voluntary entry of a guilty plea to Count One of the indictment, a reasonable jurist could not conclude either that this Court is in error in denying the instant petition or that Lynch should be allowed to proceed further regarding this claim, *Slack, supra,* 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."). In all other respects, it is recommended that the Court find that reasonable jurists could not debate whether Lynch's other numerous claims of ineffective assistance of counsel should be resolved in a different manner or that the issues presented are adequate to deserve encouragement to proceed further. Accordingly, petitioner is not entitled to a certificate of appealability with respect to any of his claims.

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. Jun. 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request to vacate, set aside or correct his sentence (Doc. 290; *see also* Doc. 293) should be **DENIED**. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this the 5th day of August, 2016.

                        s/WILLIAM E. CASSADY
                        **UNITED STATES MAGISTRATE JUDGE**